

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 23, 2022

**BY ECF**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

>      Re:   ***United States v. Chad Allen,** 19 Cr. 833 (SHS)*

Dear Judge Stein:

The Government respectfully submits this letter in connection with the sentencing of Chad Allen ("Allen" or the "defendant"), currently scheduled for September 6, 2022, at 4:00 p.m.

The Probation Office has determined that the applicable Guidelines range for the defendant is 57 to 61 months' imprisonment (Final Presentence Investigation Report dated August 5, 2022 (the "PSR") at 37). Probation recommends that Allen receive a sentence of 36 months' imprisonment. (*Id.* at 35). As set forth in the parties' plea agreement, dated January 28, 2022 (the "Plea Agreement"), the parties agree that the applicable range under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") for Allen is 63 to 78 months' imprisonment (the "Stipulated Guidelines Range"). For the reasons set forth below, the Government respectfully submits that a sentence within the Stipulated Guidelines Range is appropriate in this case.

> I.     **Background**

>      A.  **Role in the Offense**

Since early 2016, the Government, in partnership with the New York City Police Department ("NYPD") and Homeland Security Investigations ("HSI"), has been investigating a large-scale telemarketing scheme targeting elderly and vulnerable victims (the "Victims") throughout the United States. As the Court has learned while presiding over both this case and the related case (and trial) in *United States v. Ketabchi*, 17 Cr. 243 (SHS), Victims all over the country were convinced to invest their entire life savings, drain their retirement funds, and incur tens of thousands of dollars in credit card debt based on false promises that the Victims would earn money through an "online business" created and managed by those defendants and their co-conspirators (the "Business Opportunity Scheme"). In fact, the businesses did not exist, and the Victims never made any money.

Allen began participating in the Business Opportunity Scheme in approximately 2009 through his co-defendant, Shane Hanna, who was running a company called E Business Financial Group. Hanna sold that company after the Arizona Attorney General began investigating its business practices. (PSR ¶ 19).

In approximately 2012, Hanna opened a new business called American Business Builders, which employed many of the same people from E Business Financial Group, including Allen, and engaged in the same fraudulent sales practices. In November 2012, the FTC filed a complaint against American Business Builders, which settled in May 2014. After the settlement, Allen took over the business. He changed the company name but continued the same fraud scheme. Allen would pay Hanna a portion of the profits. This lasted for approximately one year. (PSR ¶ 20).

In 2015, Allen and another individual started DTCA, an Arizona-based company selling "business opportunity" products to Victims. Hanna ran the sales floor at DTCA. Although DTCA had policies on paper to avoid deceptive sales tactics, these policies were regularly ignored. For example, DTCA hired an in-house lawyer to make it appear that DTCA was supervising its sales representatives, though the lawyer was only at DTCA for a few months and sales representatives routinely ignored her advice and made false earnings promises to Victims. (PSR ¶ 21).

In 2016, the Arizona Attorney General's Office shut down DTCA for engaging in fraudulent sales practices. Hanna then opened new telemarketing companies, where Allen continued to work. While Hanna withdrew from the Business Opportunity Scheme in approximately 2018, Allen continued to engage in the scheme until his arrest in 2019. (PSR ¶ 22).

## B. Procedural History

On November 19, 2019, a grand jury sitting in the Southern District of New York returned a two-count Indictment (the "Indictment") that charged the defendant with one count of conspiracy to commit wire fraud in connection with the conduct of telemarketing, in violation of Title 18, United States Code, Sections 1349 and 2326 ("Count One"). (Dkt. 1). The defendant was arrested on November 20, 2019 and released on bail. (Dkt. 34).

On February 3, 2022, the defendant pleaded guilty to Count One of the Indictment pursuant to the Plea Agreement. (PSR ¶ 5). In the Plea Agreement, the parties stipulated that the defendant's offense level was 24 and that his criminal history category was III, resulting in a Stipulated Guidelines Range of 63 to 78 months' imprisonment. (*Id.*).

## C. The PSR and Probation's Sentencing Recommendation

The PSR calculates an offense level of 24 and a criminal history category of II, resulting in a Guidelines Range of 57 to 71 months' imprisonment (the "PSR Guidelines Range").[1] (PSR

---

[1] The PSR did not calculate any criminal history points for the defendants two convictions for violation of a promise to appear, pursuant to U.S.S.G. § 4A1.2(c)(1). This accounts for the discrepancy between the criminal history category in the Plea Agreement and the criminal history category in the PSR.

¶¶ 49, 65).  Probation recommends a sentence of 36 months' imprisonment based on the fact that all other defendants in this case and the *Ketabchi* case have received a variance below the Guidelines range of imprisonment.  (*Id.* at 38).

### D.  Defense Submission

The defendant requests this Court sentence him to a sentence no greater than one year and one day's incarceration, followed by two years' supervised release, based on his compliance with his pretrial conditions, his support network and ability to make restitution, and the sentences imposed on co-defendants in this case.

## II.    Applicable Law

The advisory Sentencing Guidelines promote the "basic aim" of Congress in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways."  *United States v. Booker*, 543 U.S. 220, 252 (2005).  Thus, the Guidelines are more than "a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge."  *United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005)*.*  The applicable Sentencing Guidelines range "will be a benchmark or a point of reference or departure" when considering a particular sentence to impose.  *United States v. Rubenstein*, 403 F.3d 93, 98-99 (2d Cir. 2005).  In furtherance of that goal, a sentencing court is required to "consider the Guidelines 'sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant,' the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims." *Booker*, 543 U.S. at 259-60 (citations omitted).

Along with the Guidelines, the other factors set forth in Section 3553(a) must be considered.  Section 3553(a) directs the Court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in paragraph two.  That sub-paragraph sets forth the purposes as:

> (A) to reflect the seriousness of the offense, to promote respect for
> the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational
> training, medical care, or other correctional treatment in the most
> effective manner. . . .

Section 3553(a) further directs the Court – in determining the particular sentence to impose – to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the

Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a).

The Second Circuit has instructed that district courts should engage in a three-step sentencing procedure. *See Crosby*, 397 F.3d at 103. First, the Court must determine the applicable Sentencing Guidelines range, and in so doing, "the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence." *Id*. at 112. Second, the Court must consider whether a departure from that Guidelines range is appropriate. *Id*. Third, the Court must consider the Guidelines range, "along with all of the factors listed in section 3553(a)," and determine the sentence to impose, whether it be a Guidelines or non-Guidelines sentence. *Id.* at 113. In so doing, it is entirely proper for a judge to take into consideration his or her "own sense of what is a fair and just sentence under all the circumstances." *United States v. Jones*, 460 F.3d 191, 195 (2d Cir. 2006).

### III.    The 3553(a) Factors Support the Imposition of a Sentence Within the Stipulated Guidelines Range

A sentence within the Stipulated Guidelines Range would be sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. Such a sentence would also afford adequate deterrence to criminal conduct and would avoid unwarranted sentencing disparities among similarly situated defendants.

The defendant was a key participant in a widespread and sophisticated scheme in which Victims all over the country were convinced to invest their entire life savings, drain their retirement funds, and incur tens of thousands of dollars in credit card debt based on the defendants' false promises that the Victims would earn money through an "online business" created and managed by the defendant's co-conspirators. In fact, there were no such businesses and the Victims never earned the money they were promised. Although the defendant was initially brought into the scheme by his co-defendant Hanna, as time went on the defendant gained more responsibility and visibility into the criminal conduct. Due to his role in the scheme, defendant was undoubtably aware of the seriousness of the scheme and the harm it inflicted. He has been identified as a "Tier 1" defendant in a prior submission to this court, being one of the most culpable defendants in this case. (*See* Dkt. No. 309 at 2).

A sentence within the Stipulated Guidelines Range would also afford both specific and general deterrence. During his membership in the conspiracy, the defendant was involved in three separate businesses that shut down because of investigations by either the Arizona Attorney General's Office or the FTC. Rather than exit the industry after those enforcement actions, the defendant continued to commit the fraud under different company names until his arrest in November 2019. Allen is not the only defendant in this case to have persisted in the fraud long after it was clear the Government knew about it. A sentence within the Stipulated Guidelines Range will send a strong message to others that there are serious consequences to committing telemarketing fraud in defiance of government enforcement actions.

The defendant argues that a variance is appropriate to avoid unwarranted disparities between himself and other defendants. That argument ignores the relative position of the many defendants in this and the related case. Focusing on the individuals identified in "Tier 1," the Court has imposed sentences of 87 months' imprisonment (Arash Ketabchi), 78 months' imprisonment (Chrisopher Wilson), and time served (Joseph Ciaccio).[2] The Stipulated Guidelines Range falls squarely within the range of sentences imposed on Tier 1 defendants and therefore would not result in sentencing disparities.

### IV.    Conclusion

In light of the foregoing, a sentence within the Stipulated Guidelines Range would be sufficient but not greater than necessary to serve the aims of sentencing in this case.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:

Kiersten A. Fletcher
Robert B. Sobelman
Sheb Swett
Assistant United States Attorneys
(212) 637-2238/2616/6522

Cc:  Counsel of Record (by ECF)

---

[2] As the Court is aware, Ciaccio suffered a debilitating injury while on pretrial supervision and, consequently, the parties agreed that a non-incarceratory sentence was appropriate.